FREDERICK ZOELLER, Appellant, *v.* JULIA A. RILEY, Administratrix, etc., Respondent.

The burden of proof is upon the party claiming an estoppel by a former judgment, to show clearly that the fact in issue was determined in the former action.

A purchaser on sale under a chattel mortgage is not concluded by a subsequent adjudication, in an action against the mortgagor and mortgagee, to which he was not made a party, that the mortgage was fraudulently made.

Where the purchase was in good faith, the title of the purchaser is not affected by the fact that the mortgage was executed in pursuance of a conspiracy between the mortgagor and mortgagee to hinder, delay and defraud the creditors of the former.

A debtor may dispose of property with intent to defraud his creditors, and yet give a good title to one who pays value and has no knowledge of, and does not participate in, the fraud.

The pendency, at the time of the purchase, of an action brought by the creditor against the fraudulent mortgagor and mortgagee, to recover damages for the conspiracy, at least where the complaint has not been filed, is not notice to the purchaser of any infirmity in the mortgage.

(Argued June 9, 1885 ; decided October 6, 1885.)

APPEAL from judgment of the General Term of the City Court of Brooklyn entered upon an order made April 18, 1884, which affirmed a judgment in favor of defendant, entered upon an order dismissing the complaint on trial.

The nature of the action and the material facts are stated in the opinion.

*James D. Bell* for appellant.   The burden of proof rests upon those who rely upon the estoppel to show all the facts in regard to the identity of the issue and of the parties. (*Duchess of Kingston's Case*, 2 Smith's L. C. 784; Broom's Leg. Max. 338; 1 Greenl. on Ev., §§ 532–538; *Bigelow* v. *Winson*, 1 Gray [Mass.], 299; *Clemens* v. *Clemens*, 37 N. Y. 59; Freem. on Judg., §§ 159, 276.) Unless estoppel is shown, the estoppel does not arise. (*Clemens* v. *Clemens*, 37 N. Y. 59.) To impeach a chattel mortgage for fraud, it is not competent to show other fraudulent mortgages on the same goods. (*Ford* v. *Williams*, 13 N. Y. 577; *Kerr* v. *Hayes*, 35 id. 331; *Booth* v. *Powers*, 56 id. 22; *Stowell* v. *Chamberlain*, 60 id. 272; *Dawley* v. *Brown*, 79 id. 390.) A vendee or assignee will not be estopped by a recovery against the vendor or assignor subsequent to the sale or assignment. (*Campbell* v. *Hall*, 16 N. Y. 575; *Raymond* v. *Richmond*, 78 id. 351; *Doe* v. *Earl of Derby*, 1 Ad. & El. 783; *Adams* v. *Barnes*, 17 Mass. 365; 1 Greenl. on Ev., § 536; Freem. on Judg., § 201.) And this, though the property be transferred while an action is actually pending, unless some strict proof of *lis pendens* be made by the person invoking the estoppel. (*Leitch* v. *Wells*, 48 N. Y. 585; *Sutherland* v. *Bradner*, 34 Hun, 519.) The defendant having offered the judgment-roll in evidence for a specific purpose — that is to bind plaintiff as an estoppel — plaintiff's general objection thereto is good as matter of fact; nothing had been proved showing under the rules that it was relevant or binding as an estoppel. (*Levin* v. *Russell*, 42 N. Y. 251; *Williams* v. *Sargent*, 46 id. 351.) It is immaterial when the judgment in *Quimby* v. *Strauss* was rendered, if, before an execution on it was delivered to the

sheriff, the plaintiff purchased the goods in controversy. (*Leonard* v. *Barker*, 2 Denio, 220 ; *Ridgely* v. *Spencer*, 2 Binn. 75 ; Freem. on Judg. [3d ed.], § 251.) As defendant did not show that this property was purchased *pendente lite*, the plaintiff is not bound by the result of the action. (Wade on Notice, §§ 342, 351, 372, 375 ; *Leitch* v. *Wells*, 48 N. Y. 585; Freem. on Judg., § 197.) There being no proof of any levy upon the goods in controversy under any judgment against any party through or from whom the plaintiff derived his possession or title, it was error to have dismissed the complaints. (Code of Civ. Pro, § 1409.) As plaintiff had actual possession of the property converted when it was taken by defendant, the defendant having proved no title, warrant or authority under which he took the goods, is a mere trespasser, and possession is sufficient evidence of title as against a mere trespasser. (*Armory* v. *Delamirie*, 1 Str. 504 ; 1 Smith's L. C. 374; *Duncan* v. *Spear*, 11 Wend. 54 ; *Faulkner* v. *Brown*, 65 N. Y. 310; *Stowell* v. *Otis*, 71 id. 36 ; 2 Greenl. on Ev., § 637 ; Story on Bail., § 93 d, e, f; 3 Blackst. Com. 152, note by Chitty; *Knapp* v. *Winchester*, 11 Vt. 351 ; *Coffin* v. *Anderson*, 4 Blackf. [Ind.] 375 ; *Carter* v. *Bennett*, 4 Fla. 283; *Giles* v. *Grover*, 6 Bligh, 277 ; *Addison* v. *Rounds*, 4 Ad. & El. 709 ; *Cook* v. *Patterson*, 35 Ala. 102 ; *Harker* v. *Dennet*, 9 Gill, 7.) To let in proof that plaintiff's title was fraudulent, defendant must first show, (1) that he seized the goods under valid process, and (2) that the persons at whose instigation the process was issued were creditors with a special lien either by judgment or attachment against them. (*Castle* v. *Noyes*, 14 N. Y. 329 ; *Rinchy* v. *Stryker*, 28 id. 45 ; *McKinley* v. *Bowe*, 97 id. 93 ; 2 Greenl. on Ev., § 629.)

*Thomas E. Pearsall* for respondent. A former judgment of a court of competent jurisdiction directly upon the point in issue is a plea in bar, or, as evidence, is conclusive between the same parties, or others claiming under them, upon the same matter directly in question in a subsequent suit or proceeding. (*Clemens* v. *Clemens*, 37 N. Y. 74 ; *Dunham* v. *Bower*, 77 id.

76; *Tuska* v. *O'Brien*, 68 id. 447; *Doty* v. *Brown*, 4 id. 71; *Kingsland* v. *Spaulding*, 3 Barb. Ch. 341; 5 Com. 550; 2 Hen. & Munf. 55.)

EARL, J. On the 26th day of September, 1878, James Cavanaugh, being the owner of some carriages, horses and other chattels used in a livery-stable kept by him in the city of Brooklyn, mortgaged them to Joseph H. Strauss, to secure the payment to him of $1,000 and interest on demand. Strauss took possession of the property under his mortgage January 21, 1879, and on that day caused it to be sold by auction, at which he purchased it for $1,000. On the same day he sold it to Joseph Cavanaugh, a son of James, for $1,000, and took from him a mortgage thereon to secure the whole purchase-price payable on demand. On the 19th day of May, 1880, Strauss sold and assigned the mortgage to the plaintiff for the sum of $750 paid to him, and he took possession of the property mortgaged. Thereafter Thomas M. Riley, as sheriff of Kings county, the defendant's intestate, seized and took from plaintiff's possession one of the carriages under an execution issued upon a judgment recovered against James Cavanaugh by James M. Quimby and others, and then this action was commenced to recover for the conversion of the carriage. The sheriff in his answer alleged that the carriage was the property of James Cavanaugh, and justified the taking under the judgment and execution named. Upon the trial the plaintiff's title and the taking were proved as alleged. The sheriff did not give formal proof of the judgment and execution, but they seem to have been assumed upon the trial, without dispute, and we will assume them for the purposes of this appeal. At the close of the plaintiff's proofs the defendant put in evidence the proceedings had and judgment recovered in an action brought by Quimby and others against Joseph H. Strauss, Baldwin F. Strauss and James Cavanaugh, to recover damages for a conspiracy to defraud them in the collection of the same judgment against James Cavanaugh, upon which the execution above mentioned was issued, and another

judgment, and claimed that by that judgment it was conclu-
sively established that the mortgage executed by James
Cavanaugh to Joseph H. Strauss, above mentioned, was fraudu-
lent and void, and that the plaintiff was estopped by that
judgment, and the trial judge so held, and nonsuited the
plaintiff. The sole matter for our determination is the effect
of that adjudication upon the rights of the plaintiff in this
action.

In the conspiracy action the plaintiffs alleged the re-
covery by them of two judgments against James Cavanaugh,
one for $223.43, March 26, 1877, and another for $498.51,
April, 1877, and that the defendants had conspired and fraud-
ulently done various things to defeat them in the collection of
their judgments, and among other things they alleged that
Cavanaugh had placed a mortgage of $1,500 upon his livery
property to Croghan and Haley, which was fraudulent and
without consideration ; that the defendants held out and pre-
tended that one Louis Baer, a relative of the defendants Strauss,
owned the property, and that Cavanaugh also gave the mort-
gage hereinbefore mentioned of $1,000 to Joseph H. Strauss,
which sum was not then due or owing to him. Upon the
trial of that action evidence was given by the plaintiffs
therein to establish the various acts of conspiracy and fraud
alleged against the defendants, and the defendants gave
evidence tending to show that the mortgages, and particularly
the mortgage for $1,000, were given for full consideration.
The judge presiding at the trial of that action charged the jury
that if the defendants were guilty of the wrongs alleged, the
plaintiffs were entitled to a verdict for the damages sustained
by them, which verdict should include the amount of the two
judgments and interest and other damages caused to the plain-
tiffs. The jury rendered a verdict for $1,300 against James
Cavanaugh and Joseph H. Strauss, and found no cause of
action against the other Strauss. Joseph H. Strauss appealed
from the judgment entered against him to the General Term,
and from affirmance there to this court, and here the judgment
was affirmed. (90 N. Y. 664.)

We are of opinion that that judgment did not conclu-
sively establish, as against the plaintiff, that the mortgage
assigned to him was inoperative and void, and thus did not
give him a valid lien upon or title to the carriage taken
by the sheriff. (1.) It is not clear that the jury found in
the conspiracy action that the mortgage for $1,000 was
fraudulent and without consideration. There was abundant
evidence from which they could have found that that mort-
gage was based upon a full consideration, and that it was given
to secure Joseph H. Strauss for an honest debt. The proof
was very strong, if not conclusive, that Cavanaugh owed Crog-
han and Haley only about $400, and that he gave the mortgage
for $1,500, for the express purpose of defrauding Quimby &
Co. from collecting their debts, and the giving of that mortgage
and other wrongful acts may have induced the verdict, while
the jury found the other mortgage valid and free from fraud.
It is sufficient to say that we cannot be certain that there was
in that action any adjudication condemning that mortgage, and
the burden was upon the defendant to establish that fact.
(*Clemens* v. *Clemens,* 37 N. Y. 59; *Russell* v. *Place,* 94 U.
S. 606.) (2.) Neither the plaintiff nor Joseph Cavanaugh was
a party to that action, and therefore they were not bound by the
adjudication therein. That action was originally commenced
against the defendants Strauss alone November 9, 1878.
Subsequently James Cavanaugh was added as a party, and
the amended summons and complaint were served upon him
November 14, 1879. The action was tried and verdict therein
rendered March 25, 1880, and the judgment was entered May
27, 1880. The livery property was sold to Joseph Cavanaugh
January 21, 1879, on which day he took possession thereof and
executed the mortgage under which the plaintiff claims, and
that mortgage was assigned to the plaintiff May 19, 1880. It
is thus seen that long before the conspiracy action was com-
menced against James Cavanaugh, Joseph Cavanaugh had ob-
tained his title to the property through a sale made under a
power given by James. It matters not that he took his title
immediately from Joseph H. Strauss, who was a party to that

action, as the title came to him before verdict and judgment in that action. Therefore, no adjudication made in that action subsequently to his purchase could bind him. (Freem. on Judg., § 201; *Adams* v. *Barnes*, 17 Mass. 365; *Campbell* v. *Hall*, 16 N. Y. 575.) There was no adjudication upon the plaintiff's mortgage or title in that action, and he has all the right and title which Joseph Cavanaugh had, and he holds under him. (3.) But there is a still more radical answer to the alleged estoppel. We may assume that it was established in the conspiracy action that the mortgage of James Cavanaugh was fraudulent, and made with intent to hinder and delay Quimby & Co. in the collection of their judgment, and yet the nonsuit cannot be upheld. Joseph Cavanaugh must here be deemed a *bona fide* purchaser of the property for value. Whether his title be deemed to have come from James Cavanaugh or Joseph H. Strauss, or from both of them, it was perfect against the whole world. Even if they intended fraud in the disposition of the property they made, they could give a good title to a *bona fide* purchaser for value, and such he was, as he gave his promissory notes for the property and paid one or more of them. A person who has purchased property under such circumstances that the seller could avoid it for fraud can yet give a good title to a *bona fide* purchaser for value. (*Simpson* v. *Del Hoyo*, 94 N. Y. 189.) So a debtor may dispose of his property with the intent to defraud his creditors and yet give a good title to one who pays value and has no knowledge of, and does not participate in the fraud. (2 R. S. 137, § 5; *Starin* v. *Kelly*, 88 N. Y. 418; *Murphy* v. *Briggs*, 89 id. 446; *Parker* v. *Conner*, 93 id. 118.) Therefore, after the sale of this property to Joseph Cavanaugh it ceased to be the property of James Cavanaugh for any purpose. It had passed beyond the reach of his creditors and could not be seized for his debts except upon proof of a fraudulent intent by him and Joseph H. Strauss not only, but also upon proof assailing for fraud the purchase of Joseph Cavanaugh. Therefore if it should be held that the mortgage of James Cavanaugh to Strauss was fraudulent and void as to

the judgment creditors of the mortgagor, that would not justify the seizure of the property in the possession of Joseph Cavanaugh, or of any one who purchased it from or under him.

It cannot be well claimed that this plaintiff's rights are in any way affected because the mortgage assigned to him was given and assigned while the conspiracy action was pending. That action was not commenced to determine the status of that mortgage, or of the prior mortgage, or of the property covered thereby, and that mortgage and that property were not the subject of that action. It was simply an action to recover damages for a conspiracy, and hence, certainly as no complaint had been filed, the pendency of that action was not notice to any one not a party thereto of any infirmity in or claim against either mortgage. (*Leitch* v. *Wells,* 48 N. Y. 585.)

The judgment should be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.